IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

                            CRIMINAL NO. 1:19CR41
                            (Judge Keeley)

TERESA MILLER,

      Defendant.

MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]

This felon in possession case stems from a traffic stop conducted on Route 7 in Sabraton, a community in Morgantown, West Virginia. While working the midnight shift, Officer David W. Helms ("Officer Helms") of the Morgantown Police Department observed a vehicle drive by with a defective tail light. After initiating a traffic stop, Officer Helms extended the length of the stop to deploy his K-9 partner, Hunter, who alerted to the presence of drugs. The subsequent search uncovered two firearms and digital scales, which ultimately were connected to the defendant, Teresa Miller ("Miller"), a convicted felon.

Pending is Miller's motion to suppress this evidence, which she claims was obtained in violation of her Fourth Amendment rights. For the following reasons, the Court **SUSTAINS IN PART** Miller's objections (Dkt. No. 37), **ADOPTS IN PART AND REJECTS IN**

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

**PART** the magistrate judge's report and recommendation (Dkt. No. 36), and **DENIES** Miller's motion (Dkt. No. 22).

## I. Background

### A.    Procedural History

On July 9, 2019, a grand jury sitting in the Northern District of West Virginia returned a one-count indictment against Miller, charging her with Unlawful Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Dkt. No. 1). After Miller moved to suppress the firearms and other evidence on August 15, 2019 (Dkt. No. 22), the Court then directed a response and referred the motion to the Honorable Michael J. Aloi, United States Magistrate Judge, for initial review and report and recommendation ("R&R") (Dkt. Nos. 23, 28).

Magistrate Judge Aloi conducted an evidentiary hearing on the motion (Dkt. No. 34), at which the Government presented the testimony of Officer Helms (Dkt. No. 35). The facts adduced at this hearing are summarized fully in the R&R, and the Court has reviewed the evidence introduced during the hearing and the audio recording of the hearing itself.

2

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

**B.    Report and Recommendation**

On September 4, 2019, Magistrate Judge Aloi recommended that the Court deny Miller's motion to suppress (Dkt. No. 36). He reasoned that, in light of the totality of the circumstances and Officer Helms' extensive experience in drug investigations and interdiction, Officer Helms had reasonable suspicion to extend the length of the traffic stop beyond the time necessary to issue the driver, Jennifer Phillips ("Phillips"), a warning for a defective tail light. Id. at 11-14. This was based on Phillips' decision to come to a slow stop in a dark area in a known drug corridor, her continuous and noticeable shaking, her excessive chattiness, her nervous tapping on the driver's side door, and the lack of eye contact by the passengers, Joshua Tusing ("Tusing") and Miller. Id.

**C.    Miller's Objections**

In her objections, Miller challenges the R&R's reliance on Officer Helms' experience and training, contending that Magistrate Judge Aloi applied the wrong standard (Obj. No. 1) and erred in finding certain facts supporting reasonable suspicion to extend the

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

traffic stop (Objs. Nos. 2-4) (Dkt. No. 37).[1] First, she contends Phillips was not uncommonly nervous and did not chat excessively (Obj. No. 2). <u>Id.</u> at 3-4. Second, she contends the behavior of the occupants of the vehicle was not reasonably indicative of suspicious activity (Obj. No. 3). <u>Id.</u> at 4-5. Finally, she contends Phillips pulled her vehicle over in a timely and safe manner (Obj. No. 4). <u>Id.</u> at 5-6.

### III. STANDARD OF REVIEW

When considering a magistrate judge's R&R pursuant to 28 U.S.C. § 636(b)(1), the Court must review de novo those portions to which objection is timely made. Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [defendant] does not object." <u>Dellacirprete v. Gutierrez</u>, 479 F. Supp. 2d 600, 603-04 (N.D. W. Va. 2007) (citing

---

[1] Here, it is important to note that Miller does not object to the R&R's conclusion that Officer Helms had probable cause to initiate the traffic stop in the first instance, nor does she object to its conclusion that Officer Helms had probable cause to search Phillips' vehicle after his K-9 partner, Hunter, passively alerted to the presence of drugs (Dkt. No. 37). Accordingly, the only conclusion in dispute here is whether Officer Helms had reasonable suspicion to extend the traffic stop beyond its original purpose of issuing a warning for Phillips' defective tail light.

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

### IV. APPLICABLE LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . and effects . . . against unreasonable . . . searches and seizures." U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 809–10 (1996) (citations omitted). Therefore, "[a]n automobile stop is . . . subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Id. at 810.

"Because a traffic stop is more akin to an investigative detention than a custodial arrest, [courts must] analyze the constitutionality of such a stop under the two-prong standard enunciated in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968)." United States v. Williams, 808 F.3d 238, 245 (4th Cir.

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

2015); see also Rodriguez v. United States, 135 S. Ct. 1609, 1614
(2015) ("[A] routine traffic stop is 'more analogous to a so-called
"Terry stop" . . . than to a formal arrest.'" (citations omitted)).
The Terry standard requires the Court to determine whether (1) the
traffic stop was justified at its inception and (2) Officer Helm's
"actions during the seizure were 'reasonably related in scope' to
the basis for the traffic stop." Williams, 808 F.3d at 245 (citing
United States v. Rusher, 966 F.2d 868, 875 (4th Cir. 1992)); see
also United States v. Vaughn, 700 F.3d 705, 709 (4th Cir. 2012)
(citing same).

"The first prong is satisfied whenever 'it is lawful for
police to detain an automobile and its occupants pending inquiry
into a vehicular violation.'" United States v. Bernard, 927 F.3d
799, 805 (4th Cir. 2019) (quoting Arizona v. Johnson, 555 U.S. 323,
327 (2009)). "The second prong is satisfied when the seizure is
limited to the length of time reasonably necessary to issue the
driver a citation and determine that the driver is entitled to
operate his vehicle." Id. (citing United States v. Branch, 537 F.3d
328, 337 (4th Cir. 2008)).

MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]

"Authority for the seizure [] ends when tasks tied to the traffic infraction are——or reasonably should have been——completed." Rodriguez, 135 S. Ct. at 1612 (citing United States v. Hill, 849 F.3d 195, 199 (4th Cir. 2017) [hereinafter Hill I] ("A routine traffic stop becomes an unreasonable seizure when law enforcement impermissibly exceeds the stop's scope or duration." (citations omitted)). "Ordinary tasks incident to a traffic stop include 'inspecting a driver's identification and license to operate a vehicle, verifying the registration of a vehicle and existing insurance coverage, and determining whether the driver is subject to outstanding warrants.'" United States v. Bowman, 884 F.3d 200, 210 (4th Cir. 2018) (quoting United States v. Hill, 852 F.3d 377, 382 (4th Cir. 2017) [hereinafter Hill II]).

"A police officer can extend the duration of a routine traffic stop only if the driver gives consent or if there is reasonable suspicion that an illegal activity is occurring." Bernard, 927 F.3d at 805 (citing Branch, 537 F.3d at 336). "In order to assess whether reasonable suspicion is present, [courts] look at the 'totality of the circumstances' and the officer must demonstrate a 'particularized and objective basis for suspecting legal

7

MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]

wrongdoing.'" Id. (quoting United States v. Vaughan, 700 F.3d 705, 710 (4th Cir. 2012)).

"Reasonable suspicion is a 'commonsense, nontechnical' standard that relies on the judgment of experienced law enforcement officers, 'not legal technicians.'" United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016) (quoting Ornelas v. United States, 517 U.S. 690, 695 (1996)). "[T]he articulated factors supporting reasonable suspicion during a traffic stop 'must in their totality serve to eliminate a substantial portion of innocent travelers,' and also demonstrate a connection to criminal activity." Id. (quoting Williams, 808 F.3d at 246).

"The possibility that some of the facts might be innocently explained does not suffice to defeat a finding of reasonable suspicion if 'the relevant facts . . . in their totality serve to eliminate a substantial portion of innocent travelers.'" United States v. Nestor, No. 1:17CR43, 2018 WL 447618, at *7 (N.D. W. Va. Jan. 17, 2018) (quoting Williams, 808 F.3d at 246). Thus, when "reviewing police action, courts must look at whether the evidence as a whole establishes reasonable suspicion rather than whether each fact has been individually refuted, remaining mindful of 'the

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

practical experience of officers who observe on a daily basis what transpires on the street.'" Bowman, 884 F.3d at 213 (quoting Branch, 537 F.3d at 336–37).

Critically, "[t]he reasonable suspicion standard is less demanding than the probable cause standard or even the preponderance of evidence standard." Bowman, 884 F.3d at 213 (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Indeed, "the quantum of proof necessary to demonstrate 'reasonable suspicion' is 'considerably less than [a] preponderance of the evidence.'" Branch, 537 F.3d at 336 (alteration in original) (quoting Wardlow, 528 U.S. at 123).

### V. DISCUSSION

After conducting a de novo review of the portions of the R&R to which Miller has objected, and reviewing the remaining portions for clear error, the Court concludes that, based on the totality of the circumstances, there was reasonable suspicion for Officer Helms to extend the traffic stop beyond its mission of issuing a warning for a defective tail light.

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

**A.   The traffic stop's "mission" was completed when Officer Helms**
**printed a warning for the defective tail light.**

At bottom, Miller objects to the R&R's factual determinations
and legal conclusion that Officer Helms had reasonable suspicion to
extend the traffic stop and deploy his K-9 partner, Hunter, who
then passively alerted to the presence of drugs, giving Officer
Helms probable cause to search Phillips' vehicle. To resolve this
objection, the Court must first determine what evidence may be
considered in this reasonable-suspicion analysis.

In the R&R, Magistrate Judge Aloi acknowledged that the
original purpose of the traffic stop was to issue a warning for
Phillip's defective tail light (Dkt. No. 36 at 11). Thus, "to
extend the traffic stop beyond this point, Officer Helms would need
to have had [a] reasonable[,] articulable suspicion that criminal
activity was afoot." Id. But, in his reasonable-suspicion analysis,
Magistrate Judge Aloi stated that he had reviewed and considered
factors "up until the use of Officer Helms' K-9 Partner, Hunter,"
suggesting that he considered evidence available only after Officer
Helms had completed the mission of the traffic stop (i.e., printing
the warning) but before he deployed Hunter. Id. at 12 n.3. During

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

this time, Officer Helms removed the occupants from the vehicle and questioned Phillips. Although Miller did not object, this evidence was beyond the mission of the traffic stop.

Since the "mission" of the traffic stop was to issue Phillips a warning for her defective tail light, it follows that the authority of Officer Helms to seize Phillips, Tusing, and Miller ended when the "tasks tied to the traffic infraction [were]——or reasonably should have been——completed." Rodriguez, 135 S. Ct. at 1612 (citing Hill I, 849 F.3d at 199). These tasks were completed when Officer Helms printed the warning. Thus, he could only extend the duration of the traffic stop either with Phillips' consent or with "reasonable suspicion that an illegal activity is occurring." Bernard, 927 F.3d at 805 (citing Branch, 537 F.3d at 336). Because Phillips did not consent, Officer Helms needed reasonable suspicion——based on the facts available to him at the time he finished printing the warning——to extend the traffic stop.

As the Court may not consider any evidence available to Officer Helms after that point, the question is what evidence, if any, supports the conclusion in the R&R that Officer Helms had

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

reasonable suspicion to extend the traffic stop and deploy his K-9

partner, Hunter.

**B.    Officer Helms had reasonable suspicion to believe that criminal activity was afoot.**

After analyzing the "standard of review" applied in the R&R,

its consideration of Officer Helms' training and experience in drug

investigations and interdiction, and other factual determinations,

the Court concludes that Officer Helms had reasonable suspicion to

believe criminal activity was afoot.

**1.    The R&R properly considered Officer Helms' training and experience.**

"Reasonable suspicion is a 'commonsense, nontechnical'

standard that relies on the judgment of experienced law enforcement

officers, 'not legal technicians.'" Palmer, 820 F.3d at 650

(emphasis added) (quoting Ornelas, 517 U.S. at 695). Therefore,

when determining whether the evidence as a whole establishes

reasonable suspicion, courts must "remain[] mindful of 'the

practical experience of officers who observe on a daily basis what

transpires on the street.'" Bowman, 884 F.3d at 213 (quoting

Branch, 537 F.3d at 336-37 (cleaned up). Indeed, "context matters

. . . ." Branch, 537 F.3d at 336. "And respect for the training and

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

expertise of police officers matters as well: it is entirely appropriate for courts to credit 'the practical experience of officers who observe on a daily basis what transpires on the street.'" Id. at 336-337 (quoting United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993)).

Here, the R&R did just that. When considering whether the totality of the evidence established reasonable suspicion, Magistrate Judge Aloi credited Officer Helms' 14.5 years of experience in drug-related investigations and drug interdiction, and his 4 years as a K-9 handler, as well as the thousands of traffic stops he has conducted throughout his career. In her objections, Miller ignores this vast experience and views the evidence in a vacuum (Dkt. No. 3 at 2). Tellingly, she cites no case suggesting that the "objectively reasonable police officer" inquiry does not, or cannot, include an officer's experience. Id.

An experienced officer such as Officer Helms sees the world through a different lense than does an inexperienced officer. This would not be the first time that the constitutionality of a traffic stop arguably turned on the judgment and experience of the officer conducting the stop. See, e.g., United States v. Clinton, No.

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

3:17–CR–5, 2018 WL 3148226, at *9 (N.D. W. Va. Mar. 14, 2018)
(Trumble, J.) (noting that Justice Thomas's dissent in Rodriguez
highlighted the stark reality that "the constitutionality of a
traffic stop could turn on 'the characteristics of the individual
officer conducting the stop'"). Indeed, the Fourth Circuit has cast
doubt on an officer's ability to view a pulsating carotid artery
because he admittedly lacked medical training beyond first aid.
See, e.g., Bowman, 884 F.3d at 215.

According to his uncontradicted testimony, the focus of
Officer Helms' entire 14-plus year career has been on drug
investigations and interdiction. He has been trained on what
constitutes nervous and suspicious behavior and has conducted over
2,000 traffic stops throughout his career. Much of this experience
comes from conducting traffic stops in Sabraton, where on every
shift he has parked his marked vehicle in the same parking lot to
observe traffic on Route 7. In 2018 alone, Officer Helms conducted
approximately 300 traffic stops, more than 60 of which resulted in
drug prosecutions. Almost half of these prosecutions, approximately
28, stemmed from traffic stops he conducted on Route 7. This
training and experience informed Officer Helms' judgment about not

MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]

only how to conduct this traffic stop, but also what to observe during the stop.

> **2.    The R&R correctly concluded that Phillips was excessively nervous.**

To avoid the conclusion that Phillips was excessively nervous, Miller insists that Phillips did nothing but engage in casual conversation with Officer Helms. She notes that Phillips advised Officer Helms that the vehicle belonged to her daughter and discussed with him her experience at the DMV earlier that same day, all while attempting to locate her license, registration, and proof of insurance (Dkt. No. 37 at 3-4). Miller insists that, throughout this conversation, Phillips hands were not shaking, nor was she "exhibiting any other indicia of nervousness." Id. at 4.

The Court, however, credits Officer Helms' testimony that Phillips' hands were shaking during this interaction, which lasted approximately 1 minute and 45 seconds. Although Miller contends that the video obtained from Officer Helms' body cam does not depict any shaking hands, the quality of the video is far from perfect; nor does not it contradict Officer Helms' testimony or undermine his credibility.

15

MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]

Officer Helms credibly testified that Phillips' hands were shaking not only when she handed him her documents, but also while she was fumbling around looking for them. Notably, because the body cam rested somewhere on Officer Helms' torso, a view of Phillips' hands was often obstructed by the driver's side door or the documents Officer Helms held during the interaction. And the bright light from Officer Helms' flashlight further obscured the video's clarity. While these realities may limit the Court's ability to relive this traffic stop, they did not limit Officer Helms' ability to observe Phillips at the time. Therefore, at best, the body cam neither confirms nor contradicts his credible testimony about what he observed.

Phillips' excessive nervousness was also evident when she shared unnecessary details of her day and nervously tapped on the driver's side door after Officer Helms returned to his vehicle to run her license. Officer Helms credibly testified that, based on his training and experience, both actions were unusual during a normal traffic stop. The Court also finds significant the fact that Phillips continued to exhibit nervousness despite having been told

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

by Officer Helms that she would be free to go if her license came back clean.

Miller insists that Phillips was just making casual conversation and that her tapping was otherwise innocuous. But the Court's review does not look merely to "whether each fact has been individually refuted . . . ," Bowman, 884 F.3d at 213, but rather to "whether the evidence as a whole establishes reasonable suspicion . . . , remaining mindful of 'the practical experience of officers who observe on a daily basis what transpires on the street.'" Id. (quoting Branch, 537 F.3d at 336–37). Thus, "[t]he possibility that some of the facts might be innocently explained does not suffice to defeat a finding of reasonable suspicion if 'the relevant facts . . . in their totality serve to eliminate a substantial portion of innocent travelers.'" Nestor, 2018 WL 447618, at *7 (quoting Williams, 808 F.3d at 246). Here, the Court concludes that, when considered in their totality, Phillips' shaking hands, excessive talking, and nervous tapping "eliminate a substantial portion of innocent travelers." Williams, 808 F.3d at 246.

**MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

> **3.   The R&R correctly concluded that Phillips was slow to pull over.**

Miller suggests that "Phillips first realize[d] that Officer Helms intend[ed] for her vehicle to stop when the brake lights on her car [were] illuminated" (Dkt. No. 37 at 6). Were this true, it follows that <u>every</u> driver who fails to hit the brakes must not "realize" that the officer behind them——with emergency lights activated——wants them to pull over. To be sure, drivers who are knowingly engaged in some criminal activity may quickly realize that the officer behind them wants to pull them over, but then wait to apply their brakes and pull over until after the driver and his or her cohorts have the opportunity to quickly hide evidence or discuss their "story."

This is precisely what Officer Helms suspected when, based on his experience conducting countless traffic stops on this exact stretch of Route 7, Phillips was slow to pull over after Officer Helms activated his emergency lights. As he testified, Route 7 is a well-known corridor used to traffic drugs between Monongalia and Preston Counties (FTR at 10:13:59). Moreover, Officer Helms' suspicions and concerns for officer safety were heightened when Phillips was slow to pull over and passed at least one or two well-

18

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

lit streets and parking lots in favor of a dimly-lit section of Route 7 (FTR at 10:16:45, 10:19:38, and 11:13:49).

In her objections, Miller makes much of the fact that Phillips stopped her vehicle 17 seconds after Officer Helms activated his emergency lights (Dkt. No. 37 at 6). As she explains, after Officer Helms activated his emergency lights, Phillips applied her brakes four seconds later and turned on her blinker four seconds after that. Id. But this paints only one part of the picture.

Assuming Phillips was driving at the 35mph speed limit, doing so for just 6 seconds meant the car traveled 100 yards. So although 17 seconds may not seem like an unreasonable amount of time now, "we may not serve as Monday-morning quarterbacks." United States, --- F.3d ---, 2019 WL 4197489, at *9 (4th Cir. Sept. 5, 2019) (citing Graham v. Connor, 490 U.S. 386, 396 (1989) (noting that, under the Fourth Amendment, reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight")). The distance Phillips traveled during these 17 seconds was noticeable and significant to Officer Helms traveling behind her, even as she proceeded to slow down to a stop.

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

Under the totality of the circumstances, therefore, the Court concludes that Officer Helms had reasonable suspicion to extend the traffic stop and deploy his K-9 partner, Hunter. Not only was Phillips slow to pull over, when she did so she pulled into a dimly lit area along a corridor commonly used to traffic drugs between counties. Moreover, Phillips exhibited unusual nervousness when interacting with Officer Helms, as evinced by her shaking hands, excessive talking, and nervous tapping on the driver's side door.

**4.    The R&R improperly considered Tusing and Miller's lack of eye contact.**

In Bowman, the Fourth Circuit explained that "[t]here is nothing intrinsically suspicious or nefarious about the occupant of a vehicle not making eye contact with an officer during a traffic stop." 884 F.3d at 215. "Given the complex reality of citizen-police relationships . . . , a young man's keeping his eyes down during a police encounter seems just as likely to be a show of respect and an attempt to avoid confrontation." Id. (quoting United States v. Massenburg, 654 F.3d 480, 489 (4th Cir. 2011)). "In fact, the government in other cases has argued 'just the reverse: that it is suspicious when an individual looks or stares back at officers.'" Id. (quoting same).

20

MEMORANDUM OPINION AND ORDER
SUSTAINING IN PART MILLER'S OBJECTIONS
[DKT. NO. 37], ADOPTING IN PART AND REJECTING
IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],
AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]

Because there is nothing intrinsically suspicious about Tusing and Miller's lack of eye contact with Officer Helms, the R&R erred by considering these facts in its reasonable-suspicion analysis.

## VI. CONCLUSION

Although this case is closer than most, and the factors establishing reasonable suspicion are not overwhelming, other courts have found reasonable suspicion on even less evidence. See, e.g., United States v. Santillan, 902 F.3d 49 (2nd Cir. 2018) (finding nervous behavior and inability to provide clear answer established reasonable suspicion), cert. denied, 139 S. Ct. 1467 (2019). And, as noted earlier, the Constitution does not require more. Bowman, 884 F.3d at 213 (citing Wardlow, 528 U.S. at 123); Branch, 537 F.3d at 336 ("[T]he quantum of proof necessary to demonstrate 'reasonable suspicion' is 'considerably less than [a] preponderance of the evidence.'" (alteration in original) (quoting same)).

Therefore, for the reasons discussed, the Court:

(1) **SUSTAINS IN PART** Miller's objections (Dkt. No. 37);

(2) **ADOPTS IN PART AND REJECTS IN PART** the R&R (Dkt. No. 36); and

**MEMORANDUM OPINION AND ORDER**
**SUSTAINING IN PART MILLER'S OBJECTIONS**
**[DKT. NO. 37], ADOPTING IN PART AND REJECTING**
**IN PART THE REPORT AND RECOMMENDATION [DKT. NO. 36],**
**AND DENYING MILLER'S MOTION TO SUPPRESS [DKT. NO. 22]**

(3) **DENIES** Miller's motion to suppress (Dkt. No. 22).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: September 9, 2019.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE